## SILAS PARK et al. *vs.* JACOB MILLER et al.

1. An account of sales, rendered by a factor to his principal, showing a balance in his favor, and that a check had been given for this balance to the principal, is not conclusive evidence of a final settlement; the check may be shown to have been an advance, not payment, and the factor is not concluded thereby from recovering items of the account.

2. Such an account and check, either separate or taken together, are not within the rule extending parol evidence to explain a written contract; they do not purport to constitute an entire contract in writing showing the entire engagement of the parties; they are but acts done in execution of a verbal contract.

3. If a factor undertake to collect checks given by purchasers of goods sold for his principal, it is not a fair legal inference that he gave notice of their dishonor to his principal because he knew it himself, and it is error so to instruct a jury.

4. Keeping checks so taken a long time, without notice to the principal, is evidence from which a jury may infer an election to retain them as his own, and be chargeable with their amount; but such conclusion is one of fact, not of law.

5. Evidence that a factor was in the habit of making entries in his books designating what sales were guarantied, and what not, is not competent to prove that he did not guaranty all sales made by him.

In error to the Hudson Circuit.

This writ of error is brought to reverse the judgment of the court below, for certain errors in the admission of testimony offered by the defendants in error, and in the charge given by the court to the jury on the trial.

The plaintiffs' action was brought to recover the amount of a bill for moneys paid by the plaintiffs for the use of the defendants, and for commissions on the sale of certain cattle of the defendants. The defendants were drovers, engaged in bringing cattle to the city of New York, from the West, for sale. About the twenty-first of August, 1855, they had brought over the New York and Erie railroad thirty-eight head of cattle, upon which the freight amounted to the sum of $450.

The plaintiffs were cattle brokers. They were employed by the defendants to sell these cattle, and advanced for them, to the railroad company, the freight, and ten dollars for feeding the cattle.

Park v. Miller.

On the 21st day of August, 1855, the plaintiffs sold the cattle, with the knowledge and consent of the defendants, to one Samuel Lauterback, for $48 a head, for which they charged a commission of thirty-eight dollars, being at the rate of one dollar a head. On the same day Miller, Haring & Co., the plaintiffs, settled with the defendants, Comstock & Park, and rendered an account current or statement of the transaction, as follows:

New York, August 21st, 1855.—Messsrs. Miller,
　　Haring & Co., sold for Comstock & Park, 38
　　cattle, at $48 ...... ......... ...... ......... ......... ......$1,824.00
　　　　　　　　　　Dr.
Freight ......... .... .... ......... ......... ...........$450
Commission ...................... ......... ............... 57
Carpenter's bill ...... ...... ......... ............... 10
　　　　　　　　　　　　　　　　　　—— 517.00

　　　　　　　　　　　　　　　　　　　　$1,307.00
　　　　　　　　Add ......... ............ ....... 19.00

S. D. Haring's check, due Aug. 29th, to balance, $1,326.00 and gave them a check to the following tenor:

New York, Aug. 22d, 1855.—North River Bank pay to H. W. & C. C. Comstock, on the 29th, or order, thirteen hundred and twenty-six dollars ($1326.) Signed, Samuel D. Haring. Endorsed—Pay L. Stone & Co., or order. H. W. & C. C. Comstock, Miller, Haring & Co., L. Stone & Co.

Lauterback gave to Miller, Haring & Co. his two checks, for $900 and $924, payable to them, dated some days subsequent. These checks have never been paid. Lauterback failed before they became due, made an assignment, and according to the evidence in the cause, the plaintiffs never presented the checks to the assignee, or attempted to collect the money due upon them.

The plaintiffs did not return these checks to the defend-

Park v. Miller.

ants, or send them any notice of non-payment, or that the drawer had become insolvent; at least no direct evidence was given of these facts.

The plaintiff's check was not paid when presented : a suit was commenced upon it by Stone & Co., or the holders, and the money recovered.

Argued at November Term, 1858, before the CHIEF JUSTICE, and Justices VREDENBURGH and WHELPLEY.

*Gilchrist*, for plaintiffs in error.

*Zabriskie*, for defendants.

WHELPLEY, J. The facts show that the defendants have received payment for the cattle ; that the plaintiffs, who paid them, have not been paid either for their services and advances or for the price of the cattle, less the amount of their advances and services.

Upon the trial, it was insisted, by the defendants, that the transaction of rendering the bill and giving the check constituted, in law, a complete defence to the action ; that these documents showed conclusively that the plaintiffs had agreed to resort to Lauterback for payment for the cattle ; that they had sold him the cattle as their own, taking the risk of his solvency, and had paid the defendants absolutely, and not conditionally, and that parol evidence was inadmissible to contradict the import of the papers.

That such is their natural import is not to be disputed. The bill states that plaintiffs had sold for defendants the cattle for $1824; that the plaintiffs had deducted out of that sum $517, for advances and services, and that there remained, after allowing overcharge on commissions of $19, thirteen hundred and twenty-six dollars, which had been paid by plaintiffs' check to defendants.

The plaintiffs undertook to overthrow this documentary evidence, and to show that the cattle, by express agree-

ment between plaintiffs and defendants, were sold on time, the defendants undertaking to assume the risk of Lauterback's solvency; that they never agreed to guaranty the sale to defendants; that at the time of the settlement, and when the check was given, the plaintiffs, at the request of defendants, and for their accommodation, agreed to advance to defendants what would be due from Lauterback, collect the Lauterback checks, and out of them reimburse themselves, if they were paid, and if not, that defendants should repay the advance.

The cause evidently turned much upon the conclusiveness of these papers, whether they were only evidence of what they purported to mean, liable to be disproved by counter testimony, or whether they absolutely estopped the parties by force of the rule, that parol evidence is not competent to vary the terms of a written contract.

The court below held the papers were mere evidence, open to explanation by testimony showing the true character of the transaction.

The check and bill, together, were said to make the contract in writing. The check, alone, could not constitute the contract; it had no such meaning, except when read in connection with the bill and aided by such inferences as the defendant needed to complete his defence.

The rule excluding parol evidence to alter or control the interpretation of a written contract, only applies when the entire contract has been avowedly put in writing by the parties, where they have unmistakably declared the writing to be the record of their intentions. It cannot relate to written *memoranda* not signed by the parties, not purporting to be a contract, but mere evidence in writing from which a verbal contract may be inferred, which the parties have not reduced to writing.

"When parties have deliberately put their engagements into writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole

engagement of the parties, and the extent and manner of their undertaking was reduced to writing, and all oral testimony of a previous colloquium between the parties, or of conversations or declarations at the time when it was completed or afterwards, as it would tend, in many instances, to substitute a new and different contract for that really agreed upon, to the prejudice of one of the parties, is rejected." Such is the rule, as clearly and precisely stated by Greenleaf, in 1 *Greenl. Ev.* 275. It is to be observed that, by this statement of the rule, the writing must import a legal obligation, without uncertainty as to the object or extent of the engagement.

Was there any such written contract in this case? If so, what were its objects and extent?

The amount of the plaintiffs' claim has never, in point of fact, been paid; but the defendants insist that the plaintiffs have, by a contract in writing binding upon them, so far admitted payment as to be precluded from recovering in this action.

The plaintiffs have not executed any release under seal; they have not even signed a receipt in writing.

They have delivered a statement in writing of an account between them and the defendants, in which this claim is deducted from the amount for which certain cattle were sold; they have not, even in express terms, admitted that at the time the check was given they had actually received the money for the cattle. The non-receipt of the money is perfectly consistent with the statements of the account.

For does it import a legal obligation resting upon the plaintiffs to pay the balance of the account. It is a statement showing the balance that would remain after deducting from the price of the cattle the account of the plaintiffs, and that such balance had been paid or advanced to the defendants by plaintiffs.

The allegation of the plaintiffs was, that this balance was not in fact due from plaintiffs to defendants; that

they merely undertook to receive it for them of Lauterback, and in the meantime, for their accommodation, advanced them the money. Neither the account delivered, nor the account and check taken in connection, constitute any written contract certainly showing that such was not the agreement of the parties. The defendants do not insist that the whole agreement between the parties is contained in the check and account rendered; they offered to show, and did give evidence to that effect, that they were not the whole agreement. Where part, only, of a contract has been reduced to writing, and it so appears by the writings, and the verbal contract was entire, it may be proved by parol. *Lewis v. Gray*, 1 *Mass.* 297 ; 1 *Greenl. Ev.* 284. If the plaintiffs, instead of giving their check on their bankers for this balance, had taken the money out of their drawer, and paid it over directly to defendants, upon their promise to reimburse it in case the Lauterback checks were not paid, and also pay the amount of the account, the transaction, in all its essential features, would not have differed from that now before the court. Instead of handing over the money in person, they gave a written direction to their bankers to do it. What became of that direction 'is a matter immaterial, for two reasons: first, because the money to recover which this suit is brought was not in any way included in that check; secondly, because a check on a banker does not conclusively, as between the parties, import a precedent indebtedness to that amount in payment of which the check was given. This appears from the simple consideration that, if the plaintiffs had lent to the defendants, in a way entirely disconnected with the transaction, a sum of money, and paid it by check, instead of in cash, in an action for this borrowed money, the check would not have been conclusive evidence that it was a debt, not a loan. When one gives his check to another upon his banker, the *prima facie* presumption is that it was for money due, but the contrary may always be shown either by

written or parol evidence.  The check, on its face, is a
mere order to another to pay money ; it does not, by its
terms, settle the question whether the money is to pay a
debt or is a loan.  The presumption that it was for a debt
arises, like many other presumptions, from the ordinary
course of business ; it puts the party to show that in the
case in hand the ordinary course of business was departed
from.  Neither the account alone, nor the account and
check together, or both in connection with the fact that
the plaintiff had the checks of Lauterback, raised any
conclusive presumption.  And the court below did right in
refusing to instruct the jury, as requested by defendants'
counsel.

Whether the plaintiffs made a final settlement, and paid
to the defendants the balance, and agreed to look to Lau-
terback for reimbursement, was a matter to be settled by
the jury ; and, in settling it, the evidence of the parties
present at the time the check was given, and the bargain
with the plaintiffs made by defendants, was perfectly com-
petent.

The question whether, in an action brought by the de-
fendants against Haring & Co. upon the checks given by
them to the defendants, it was competent to show that the
check was accommodation paper, and that no value had
been received for it, was immaterial in this case; and
even if the court were wrong in the views expressed to the
jury upon that point, the judgment should not for that
reason be reversed.  An erroneous direction upon a point not
involved in the case cannot be ground for reversing the judg-
ment.  If the court did right in instructing the jury that the
check was not conclusive against the plaintiffs, it matters not
what reason was assigned for this decision.  The views
already expressed dispose of the sixth, ninth, tenth, eleventh,
twelfth, fourteenth, and fifteenth exceptions to the charge of
the judge.

The thirteenth exception is founded upon the refusal of
the court to charge the jury that, the account having been

rendered, and the check given by Haring and the plaintiffs having given no evidence of any account rendered, or information given to the defendants that Lauterback had failed, and the plaintiffs still retaining the checks, and never having tendered them to the defendants, and the agents, in this particular, having been guilty of neglect for an unreasonable time, the defendants have a right to charge the plaintiffs for the price of the cattle, either as for money had and received for the use of the defendants or for chattels sold and delivered to the plaintiffs.

Was the instruction prayed for right? Did any or all the circumstances combined create a legal liability for the Lauterback checks? The court was asked to charge that they did. We observe that the defendants did not ask the court to charge the jury that if they believed, from the evidence in the cause, the plaintiffs undertook, as agents for the defendants, to collect the check of Lauterback for them, that the plaintiffs were bound to use reasonable and due diligence in so doing; and that if the jury believed, from the evidence in the cause, they had neglected their duty in that behalf, and had failed to use due diligence in presenting this check for payment, and to notify the defendants of the default of Lauterback in making payment, and by reason of these defaults the defendants had lost the amount of the checks, that these defendants were entitled to retain the amount of the checks.

The court was asked to charge, as matter of law, that the plaintiffs had made themselves liable for the checks. An agent is not liable to his principal for default in his agency, unless the principal sustains damage by reason of such default and negligence, and then only to the extent of the injury received. The loss must be a real loss or actual damage, and not merely a probable or possible one. *Delaney* v. *Stoddard*, 1 *T. Rep.* 22; *Webster* v. *Le Tastet*, 7 *T. Rep.* 157; *Paley on Agency* 19, 21, 75, 76; *Story on Agency*, §§ 217, 222.

The facts stated in this request do not show conclusively that defendants sustained any loss. It would have been incumbent on the defendants, if they had brought an independent action against plaintiffs, to have shown that the plaintiffs were agents of the defendants for the collection of the check; that they had failed to make proper efforts to collect it, and if they had done so that it would have been collected. The court might properly have left it to the jury to say whether the defendants had not, by keeping the checks so long without advising the defendants, shown an election to keep them as their own property, and not look to the plaintiffs for reimbursement. But no such request was made. The proposition asserted by defendants' counsel was not true as matter of law, and the court was not bound so to charge.

The fourth exception was to the charge of the judge, in that he stated to the jury that the remaining question was, have the plaintiffs been refunded their money, or paid their commissions; the money for freight and carpenter's bill having been advanced by plaintiffs for defendants, at their request, and the commissions having been earned.

The remaining question truly was, had the money been refunded—the commissions paid either in fact or in law. This statement of the question, taken in connection with the other parts of the charge, did not mislead the jury; they were not told that the plaintiffs must recover unless the defendants proved an actual payment of this claim in money. The submission to the jury of the question whether there was a special contract for a sale of the cattle without guaranty, and whether the plaintiffs' check was a final settlement of the transaction or not, fully explained what the court meant by this statement of the question.

The fifth exception is, that the court misstated the fact to the jury, in saying that the plaintiffs' check was protested. This cannot be assigned for error; and if it could,

Park v. Miller.

the statement of the judge was correct—the check and protest had been offered in evidence.

The seventh exception was to that part of the judge's charge, in which he stated "that Haring's check was protested on the first of September, and the presumption was that the parties defendant got notice of it ; and in the absence of any affirmative or negative proof, it might fairly be presumed that notice was sent to all the parties interested. If the holders had notice of the dishonor of the Lauterback checks, it was fair to infer that they had informed the defendants of the fact."

The defendants had negotiated the Haring check, and were never called upon to take it up ; it was collected of Haring by the holders : it could not have been material in the cause whether the defendants had or had not notice of the protest of the check.

But the plaintiffs held the Lauterback checks ; they were not paid, and the charge of the judge was, " that it was a fair inference that, if the plaintiffs knew of the dishonor of the checks which they themselves held, they had communicated that knowledge to the defendants."

Whether this instruction was correct or not depends upon the solution of the question whether, in that action, or any phase of it, it was incumbent upon the plaintiffs to show notice to the defendants of the dishonor of the Lauterback checks. This subject has already been partially examined ; but it will be necessary to return to it again, as the aspect in which it is now presented differs from that in which it was first viewed.

If the plaintiffs held these checks as their own property, it mattered not whether they communicated notice of their dishonor to the defendants or not. But if they took them as the agents of the defendants for collection, they were bound to do something with them—to present them for payment ; and if payment was refused, to notify their principals in a reasonable time ; and if any injury was sustained by reason of their neglect to do so, they were liable to make it good to their principals.

It is manifest that if under any circumstances the plaintiffs might in this action have been charged with these checks, on account of their conduct in regard to them, either as having, by retaining them so long without notice, manifested an election to keep them as their own, or by reason of neglect in their duty as agents, it became important whether notice of non-payment had been sent by plaintiffs to defendants.

The circumstances under which they took these checks, adopting the plaintiffs' own view of the case, were very peculiar. The plaintiffs allege they sold the cattle without guaranty; that they did all their duty as agents, and were entitled to payment for their services and advances; that it was defendants' duty to collect the price of the cattle from Lauterback—that with that they had no concern; that defendants resided at the West, and could not well collect the checks; that in order to enable them to return home, the plaintiffs agreed to advance the money, as an accommodation, or loan, to the defendants; that by an arrangement made by consent of all parties, Lauterback's checks for the whole amount were to be made payable to plaintiffs; that they were so made, and delivered to them, being the only evidences of debt given for the purchase of the cattle; that these checks were accepted as conditional payment and settlement of plaintiffs' claim; that they gave to defendants their check for the balance. If the Lauterback checks had been paid, the whole transaction would have been closed —the plaintiffs' claim on defendants at an end. By the giving of those checks, Lauterback had agreed to become the debtor of plaintiffs for the price of the cattle; the plaintiffs held negotiable securities for that price, and so long as these were outstanding the defendants could not recover of Lauterback.

It is not fair to consider the collection of the checks as a mere isolated, independent transaction subsequent to the settlement between plaintiffs and defendants. They were taken as a part of the settlement between all the parties,

Park v. Miller.

as a conditional payment to the plaintiffs for their check and claim. If the checks were not paid, according to the plaintiffs' theory of the case, they were at liberty to bring an action against the defendants for the amount of their check, when paid, for money lent to defendants, and also for their services and advances, or to treat the checks as money, and retain them for their own use, and look to Lauterback for ultimate payment.

The defendants might show this upon the trial, either by express evidence that they had so agreed, or by proof of such conduct on their part, such treatment of the checks after their dishonor, as would satisfy the jury that they had so agreed.

If the plaintiffs had designed to retain the checks as their own, they would not deem it necessary to inform the defendants of their non-payment, or endorse them and send them to defendants as the evidence of their claim against Lauterback.

The defendants were entitled to have the decision of the jury on this point; if in their favor, it was a complete answer to the plaintiffs' action.

In this view of the case there was no fair or legal presumption that the plaintiffs had ever notified the defendants, in writing or otherwise, of the non-payment of the checks. There was equal reason for the presumption that they had endorsed the checks and delivered them to the defendants. There is no legal ground upon which such presumptions can rest.

For this error in the charge of the court the judgment of the Circuit Court must be reversed.

VREDENBURGH, J. This was an action, brought in the court below, by Miller & Co. v. Park & Co., to recover $450 for so much freight paid by them on the cattle of Park & Co.; also the further sum of $38 for commissions, at $1 per head, for selling said cattle, and also $10 for food for the same, all for $498.

Park & Co. pleaded payment, and gave in evidence the following paper, in the handwriting of the plaintiffs, and made out and delivered by them to the defendants at the time of its date.

New York, August 21st, 1855.—Messrs. Miller,
   Haring & Co., sold for Comstock & Park, 38
   cattle, at $48...... ......... ......... ...................... $1,824.00

Dr.

Freight ......... ......... ...... ...... ... ......... $450.00
Commissions...... ......,..... ...... ...... ......... ...    57.00
Carpenter's bill ......... ............ ...... .........    10.00
                              ————    517.00

                                  $1,307.00
             Add...... ............ .........    19.00

Samuel D. Haring's check, due August 29th........ $1,326.00
To balance......... ...... ............ ......... ......... ...... 1,326.00

It is also conceded that the check named therein was also delivered by the plaintiffs to the defendants at the same date. This is *prima facie* evidence that this claim of the plaintiffs had been paid. At the time of their sale of the defendants' cattle by them on commission, they make out an account, crediting the defendants with the proceeds of the sale, and charging them with the freight, commissions and provisions, and their check to balance, thus admitting, upon the face of the account, that they had received the amount of the sales of the defendants' cattle, and claiming that they had paid it over by the account for freight, commissions and check.

This throws upon the plaintiffs the burthen of proving that there was error or mistake in this account rendered. They undertake to do so by attempting to prove that the sale of the cattle by them was, with the consent of the defendants, upon time and at their risk; that the money

was lost by the insolvency of the purchaser; that the check was given merely to accommodate the defendants, and to be repaid if the money for the cattle was not collected.

Among other evidence offered by the plaintiffs to prove that the sale was at the risk of the defendants, the following questions were asked : 1st, were the plaintiffs in the habit of making different entries in their books in case of guaranty and not guaranty? 2d, what was the difference? which were severally excepted to, but which, under the permission of the court, were answered as follows : yes, they made a different entry ; whenever a sale was made that was guarantied, it was so entered on the book. These questions and answers were objected to as incompetent, illegal, and irrelevant.

I think this evidence was illegal for several reasons—

*First.* The question before the jury was, did or did not the plaintiffs guaranty to the defendants the proceeds of this particular sale? This could not be proved by the habit of the plaintiffs with regard to other sales, in fact, much less by proving their habit of entries in their books.

In the *second* place, even if the plaintiffs could prove that they did not guaranty this sale by proving that they did not guaranty other sales, this was not the legal mode of proving it. They were proving a certain habit of entering in their books. They do this by proving what a person has seen in their books, not by producing the books themselves. The best evidence of this habit was certainly the books themselves. Upon every principle relating to the admission of evidence, this was much more objectionable than parol evidence of particular items. It is only proving the contents of the books by wholesale, instead of by retail.

In the state of the evidence before the jury upon this material allegation, that the plaintiffs did not guaranty the sale, we cannot say that this illegal testimony did not

materially influence their decision. I think, under the circumstances, very probably that it might.

Without considering the other exceptions, the judgment below should be reversed

The CHIEF JUSTICE concurred.

CITED in Crane ads. *Elizabeth Library Ass'n*, 5 *Dutch.* 306.